IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

NGOMANI DEKATTU,                )
                                )
        Plaintiff,               )
                                )
     v.                          )       3:22-CV-00265
                                )
RODERICK BURNETTE, JENNIFFE      )
INMAN, SHERAIN TEEL, and JENNY   )
LEISER,                          )
                                )
        Defendants.              )

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.[1]

At the time of the filing of this action, pro se Plaintiff Ngomani Dekattu was a pretrial detainee at the Mecklenburg County Jail, where he had been awaiting a final supervised release revocation hearing in his criminal case, Case Number 3:22-cr-00073-TDS-DCK-1.[2] His amended complaint (Doc. 9) seeks relief pursuant to Bivens v. Six Unknown Named Agents of the Fed'l Bureau

---

[1] Chief Judge, United States District Court for the Middle District of North Carolina, designated on September 19, 2022, by the Chief Judge of the Fourth Circuit pursuant to 28 U.S.C. § 292(b). (Doc. 15.)

[2] Dekattu's criminal case, 3:22-cr-00073-TDS-DCK-1, was opened on March 16, 2022, when jurisdiction over Dekattu's supervised release was transferred from the United States District Court for the Eastern District of New York to this court. (Doc. 1 in case no. 3:22-cr-00073-TDS-DCK-1.) Dekattu was appointed counsel, and a United States Magistrate Judge entered an Order of Detention on April 14, 2022. (Doc. 8 in case no. 3:22-cr-00073-TDS-DCK-1.) The criminal case was originally assigned to the Honorable Frank D. Whitney but was reassigned to the undersigned by designation on September 19, 2022. (Doc. 30 in case no. 3:22-cr-00073-TDS-DCK-1.) After a hearing, Dekattu's supervised release was revoked on November 3, 2022. (Doc. 35 in case no. 3:22-cr-00073-TDS-DCK-1.) Dekattu was sentenced to time-served and continued on supervision for two years. (Id.)

of Narcotics, 403 U.S. 388 (1971), asserting that the Defendants, three federal probation officers and a probation lab supervisor, violated his federal civil rights by falsifying supervision violations against him. The amended complaint is before this court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. For the reasons set forth below, the amended complaint will be dismissed for failure to state a claim upon which relief can be granted. Also pending before the court is a "Request Urging the Courts to Remove Personal Address from Order Filed July 5, 2022" (Doc. 14), that is construed as a motion to redact. This motion will be granted.

I.  BACKGROUND

Dekattu filed this action on June 13, 2022. (Doc. 1.) The court struck the complaint because it appeared to have been signed, at least in part, by a non-lawyer.[3] (Doc. 4). Dekattu was granted 30 days to amend his complaint but was admonished that "to the extent that [he] is seeking to challenge his probation or is seeking the immediate release from custody, he must do so, if at all, in a separate civil action" seeking federal habeas corpus relief. (Id. at 4).

---

[3] At that time, this case was assigned to the Honorable Martin Reidinger, Chief United States District Judge.

2

Soon thereafter, Dekattu filed the present amended complaint[4] pursuant to Bivens, naming the following as Defendants in their individual and official capacities: Rodrick Burnette, a U.S. probation officer; Jenniffe Inman and Sherain Teel, United States supervisory probation officers; and Jenny Leiser, a United States probation office lab supervisor. (Doc. 9 at 2-3). Dekattu alleges that his "Federal Constitutional Rights and Human Rights was [sic] violated 1, 4, 5, 8 Amendment, and Corporate Punishment was used" against him (id. at 15), all of which has caused him to "suffer mental stress and distress, personal injury, and los[s] of employment." (Id. at 15-16.) Specifically, Dekattu claims that the Defendants falsified allegations that he violated the terms of his supervised release.[5] (Id. 17-18.) As a remedy, he seeks

---

[4] The amended complaint consists of two non-identical complaint forms (Doc. 9 at 1-16) and an unverified "Affidavit of Truth and Complaint for Violation of Civil Rights" (id. at 17-18).

[5] At the November 3, 2022 supervised release revocation hearing, Dekattu was sentenced to time-served based on his admission at the hearing to using marijuana on November 23, 2021, and December 29, 2021, during his supervision, which dates were set out in violation number 1 of the petition for revocation, and his request for a time-served sentence. (See Doc. 33 at 1 (Notice of Proposed Resolution) (noting that the Government and Dekattu recommend a sentence of time-served based on Dekattu's admitted marijuana use referenced in violation 1 and the Government's agreement not to proceed on the remaining alleged violations) and Doc. 35 (judgment), both in case number 3:22-cr-00073-73-TDS-DCK-1.)

In the amended complaint filed in the instant case, Dekattu claims that the Defendants fabricated false supervised release violation reports against him on various dates from January 2022 to April 2022. (See Doc. 9 at 5.) These allegedly fabricated supervised release violations – which the Government agreed not to proceed on as part of Dekattu's agreed
3

damages, his immediate release, and the termination of his supervision.[6]  (Id. at 5.)

## II. ANALYSIS

### A. Standard of Review

Dekattu is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity" within the meaning of the Prison Litigation Reform Act ("PLRA"), obligating this court to review his amended complaint.  28 U.S.C. § 1915A(a).[7]

---

upon recommended sentence of time-served – did not form the basis of Dekattu's revocation.  Accordingly, as to his claim for damages, a judgment in Dekattu's favor would not necessarily imply the invalidity of the revocation of his supervised release under Heck v. Humphrey.  512 U.S. 477 (1994).  See Muhammad v. Close, 540 U.S. 749, 751-52 (2004) (per curiam) (if a "prisoner's challenge threatens no consequence for his conviction or the duration of his sentence," "[t]here is no need to preserve the habeas exhaustion rule and no impediment under Heck") (cleaned up).

[6] Because Dekattu is no longer a pre-trial detainee and was given a custodial sentence of time-served, (Case No. 3:22-cr-00073-TDS-DCK-1, Doc. 35), his request for "immediate release" is now moot.  Furthermore, to the extent that he seeks to have his current term of supervised release "extinguished," he must seek relief pursuant to his direct appeal and, thereafter, 28 U.S.C. § 2255, rather than through a Bivens action.  See Preiser v. Rodriguez, 411 U.S. 475, (1973); Heck, 512 U.S. at 481 ("Presier . . . held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release"); Abella v. Rubino, 63 F.3d 1063, 1066 (11th Cir. 1995) (in § 2255 case, applying Preiser to dismiss civil rights claims for injunctive relief under Bivens as means to overturn conviction).

[7] The PLRA defines a "prisoner as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).  Although Dekattu is no longer incarcerated, because he was a pretrial detainee at the time he filed the amended complaint in July 2022, his pleading is reviewed under the PLRA.  See Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000) ("[W]e

4

The court must screen his prisoner complaint and in forma pauperis filing and "shall," at any time, sua sponte dismiss any claims that (i) are frivolous or malicious, (ii) fail to state a claim for relief, or (iii) are against a defendant who is immune. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); Michau v. Charleston Cnty., S.C., 434 F.3d 725, 727 (4th Cir. 2006).

The dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007), governs dismissals for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. See De'lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). Thus, to survive an initial review under §§ 1915(e)(2)(B) and 1915(A), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The liberal construction requirement, however, does not permit a district court to ignore a clear failure to allege facts

---

hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of . . . 28 U.S.C. § 1915.") Even if it were not, because he is seeking to proceed in forma pauperis, his pleading is also subject to review under § 1915(e)(2).

5

in the complaint which set forth a claim that is cognizable under federal law. See Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008); accord Atherton v. District of Columbia Off. Of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (noting that after Iqbal and Twombly, a "pro se complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct") (internal quotation marks and citation omitted).

### B. Bivens Claims

Here, Dekattu styles his claims under Bivens. In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Serv. Corp. v. Malesko, 534 U.S. 61, 66 (2001). In that case and two subsequent cases, the Supreme Court allowed individuals alleging certain Fourth, Fifth, and Eighth Amendment violations to proceed under this implied cause of action. See Bivens, 403 U.S. at 396-97 (finding remedy for Fourth Amendment violation related to use of unreasonable force during warrantless search and seizure); Davis v. Passman, 442 U.S. 228, 248-49 (1979) (same for violation of equal protection component of Fifth Amendment Due Process Clause); Carlson v. Green, 446 U.S. 14, 17-19 (1980) (same for violation of Eighth Amendment Cruel and Unusual Punishments Clause).

"In the years since those cases were decided, however, the Supreme Court's approach to implied damage remedies has changed

6

dramatically to the point that 'expanding the Bivens remedy is now a disfavored judicial activity.'" Annappareddy v. Pascale, 996 F.3d 120, 133 (4th Cir. 2021) (quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017)).  "To inform a court's analysis of a proposed Bivens claim," the Supreme Court has "framed the inquiry as proceeding in two steps." Egbert v. Boule, 142 S. Ct. 1793, 1803 (2022).  First, a court should consider "whether the case presents 'a new Bivens context' — i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." Id. (quoting Ziglar, 137 S. Ct. at 1859-1860).  Second, if the claim does arise in a new context, "a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. (quoting Ziglar, 137 S. Ct. at 1858).

Last term in Egbert, the Supreme Court emphasized that this two-step inquiry boils down to "a single question: whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed'"; if so, Bivens does not afford relief. 142 S. Ct. at 1803 (quoting Ziglar, 137 S. Ct. at 1858).  Bivens is thus unavailable where "Congress has provided alternative remedies for aggrieved parties in [the plaintiff's] position." Id. at 1806.  The nature of an alternative remedy, moreover, is of no moment

7

because "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy."  Id. at 1807.

It is a fundamental proposition that a Bivens action may not be brought against a federal employee in his or her official capacity.  Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) ("Bivens action does not lie against . . . officials in their official capacity"); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government"); Kim v. United States, 632 F.3d 713, 715 (D.C. Cir. 2011) ("It is well established that Bivens remedies do not exist against officials sued in their official capacities.")  Therefore, before proceeding further, the court is constrained to conclude that each of Dekattu's claims asserted against the Defendants in their official capacity is not cognizable and will therefore be dismissed with prejudice.  As to the claims made against the Defendants in their individual capacity, for the reasons below, Dekattu's amended complaint fails to state a claim at this stage.

### 1. Supervisory Liability Claims

In the amended complaint, Dekattu names four defendants, each of whom he purports to sue in both their official and individual capacity: Rodrick Burnette, a U.S. probation officer; Jenniffe

8

Inman and Sherain Teel, United States supervisory probation officers; and Jenny Leiser, a United States probation office lab supervisor. (Doc. 9 at 2-3, 17-18.) Even liberally construed, however, the complaint's allegations make it apparent that each of Dekattu's allegations is made against Burnette – not the other named Defendants. Nowhere in either the complaint or in the accompanying "Affidavit of Truth" does Dekattu allege personal involvement or even awareness by Inman, Teel, or Leiser. (See Doc. 9 at 17-18.) To the extent that Dekattu is seeking to impose supervisory liability on these three Defendants, that claim necessarily fails. In the Fourth Circuit, there is no supervisory liability under Bivens absent a showing "that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" and that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices," causing the plaintiff's injury. Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014); see also Baker v. United States, 645 F. App'x 266, 269 (4th Cir. 2016).

Here, the amended complaint is completely devoid of any allegation to plausibly establish that the supervisory defendants had constructive knowledge that Burnette was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional

9

injury to Dekattu.  See Jones v. Alvarez, No. 1:19CV930, 2021 WL 796509, at *5 (M.D.N.C. Mar. 2, 2021).  Accordingly, the claims against Defendants Inman, Teel, and Leiser will be dismissed for failure to state a claim upon which relief can be granted.

In the affidavit accompanying the amended complaint, Dekattu also makes allegations against the U.S. Probation Office itself. (See Doc. 9 at 18.)  Any such claim is not cognizable, as it is well-established that a plaintiff cannot bring a Bivens suit against a federal agency.  See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994); Humphrey v. U.S. Prob. Dep't, 221 F.3d 1334 (6th Cir. 2000); Fuller-Avent v. U.S. Prob. Office, 226 F. App'x 1, 4 (D.C. Cir. 2006).

### 2. Claims Against Burnette

#### a. First Amendment Claim

The remaining claim is against Burnette.  Dekattu first claims that Burnette violated his First Amendment rights.  (Doc. 9 at 4, 14, 15).  Read generously, Dekattu's complaint ostensibly raises a First Amendment retaliation claim.  In various places in the affidavit accompanying his complaint, Dekattu claims that Burnette intimidated, threated, and harassed him.  (Doc. 9 at 17-18.)  He also asserts that Burnette created "false" supervised release violation reports against him and then "deprived" him of the ability to "file a formal complaint . . . prior to [the] Supervised Release Violation Report."  (Id.)

10

His claim fails for two reasons. First, nowhere does Dekattu allege that he was engaged in protected speech, nor does he claim that certain adverse actions were taken against him because of that speech. See Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact, are not sufficient to state a claim). Although pro se litigants are entitled to a significant degree of latitude when it comes to pleadings, the liberal construction requirement "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." See Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020). Second, and dispositive, is the fact that the Supreme Court has held that "there is no Bivens action for First Amendment retaliation." Egbert, 142 S. Ct. at 1807; Earle v. Shreves, 990 F.3d 774, 781 (4th Cir. 2021) (pre-Egbert case declining to extend Bivens to include First Amendment retaliation claims); see also Reichel v. Howards, 566 U.S. 658, 663 n.4 (2012) (noting that the Supreme Court has "never held that Bivens extends to First Amendment claims").

Accordingly, Dekattu's First Amendment claim will be dismissed for failure to state a claim upon which relief can be granted.

### b. Eighth Amendment Claim

Dekattu also claims that Burnette violated his Eighth Amendment rights, apparently by subjecting him to corporal

11

punishment. (Doc. 9 at 15).[8] Preliminarily, the court notes that a federal pretrial detainee's right to be free from cruel and unusual punishment implicates the Due Process Clause of the Fifth Amendment, rather than the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001). This is because "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977). This distinction can matter, moreover, because the "language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" Kingsley v. Hendrickson, 576 U.S. 389, 400 (2015) (quoting Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977)). For this reason, Dekattu's Bivens claim under the Eighth Amendment fails.

Here, however, even if analyzed under the Fifth Amendment's Due Process Clause, Dekattu's claim fails to satisfy the most basic pleading requirements. Aside from one vague reference to being

---

[8] In the affidavit accompanying the amended complaint, Dekattu claims that "corporate punishment was used against me." (Doc. 9 at 15.) The court assumes Dekattu meant "corporal punishment," which is ordinarily considered "physical punishment . . . that is inflicted on the body." Punishment, Black's Law Dictionary (11th ed. 2019).

12

"violated" by Defendants on "or about April 7, 2022" (which ostensibly refers to a violation of his supervised release), Dekattu sets forth no specific instance of "corporal punishment," much less any specific allegations plausibly alleging that the "force" used against him "was objectively unreasonable" in light of "the legitimate interests that stem from the government's need to manage the facility in which the individual is detained." Kingsley, 576 U.S. at 396-97 (cleaned up).

In short, Dekattu's Eighth Amendment claim – which the court construes as resting on the Fifth Amendment's Due Process Clause - "is exactly the kind of 'naked assertion' that is insufficient to state a claim." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 221 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678). Accordingly, this claim will be dismissed for failure to state a claim upon which relief can be granted.[9]

---

[9] Even had Dekattu alleged more facts, it is unclear – and perhaps doubtful – whether Bivens would provide a cause of action under the Fifth Amendment Due Process Clause. Although the Supreme Court authorized a Bivens action under the Fifth Amendment Due Process Clause in Davis v. Passman, 442 U.S. 228 (1979), this does not mean that all Fifth Amendment claims have a Bivens remedy. See Ziglar, 137 S. Ct. at 1863 (rejecting Bivens remedy for prisoner abuse claim based on Fifth Amendment's Due Process Clause); Schweiker v. Chilicky, 487 U.S. 412, 420 (1988) (denying a Bivens action under the Fifth Amendment's Due Process Clause for wrongful denial of Social Security disability benefits); Cantu v. Moody, 933 F.3d 414, 422 (5th Cir. 2019) ("No one thinks Davis — which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause — means the entirety of the Fifth Amendment's Due Process Clause is fair game in a Bivens action.")

13

### c. Fourth and Fifth Amendment Claims

The remaining claims against Burnette, liberally construed, can be boiled down to two basic theories of liability. The first theory is that Burnette violated the Fourth Amendment, ostensibly under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), by knowingly submitting false information – primarily the results of certain drug tests showing that Dekattu had used marijuana in violation of the terms of his supervision – to secure the revocation of Dekattu's supervised release. (Doc. 9 at 17 (claiming that Burnette "has falsified the Toxicology Report . . . and Abbott Drug Test Report").) The second theory is that Burnette violated the Fifth Amendment's Due Process Clause by fabricating that evidence to obtain the revocation of Dekattu's supervised release. (<u>Id.</u> at 17-18 (claiming that Burnette "has created a false supervised release violation report against plaintiff").) <u>See</u> <u>Massey v. Ojaniit</u>, 759 F.3d 343, 354 (4th Cir. 2014) (recognizing a "due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity") (internal quotation marks and citations omitted).

Dekattu, however, has alleged no facts - beyond his subjective, unsupported belief – making plausible the claim that Burnette falsified evidence to secure the supervised release revocation. This failure is fatal to his claims. The allegations

14

do not specify how Burnette falsified evidence against Dekattu. Nor do they refer to any underlying facts to support the purported constitutional violations. Instead, Dekattu's Fourth and Fifth Amendment claims amount to "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are not pled with enough specificity to plausibly state a claim. Iqbal, 556 U.S. at 678; see Oakley v. Dyer, No. 2:21-CV-169-Z-BQ, 2022 WL 10676593, at *6 (N.D. Tex. Sept. 12, 2022), report and recommendation adopted, No. 2:21-CV-169-Z-BQ, 2022 WL 10656143 (N.D. Tex. Oct. 18, 2022) (allegation that defendant falsified drug test results failed to state a claim because the plaintiff "set forth no facts — beyond his subjective, unsupported belief — demonstrating [that the defendant] falsified his drug test results"); Teixeira v. Hanneman, No. 17-CV-6673-PSG (KS), 2018 WL 6164309, at *6 (C.D. Cal. Mar. 6, 2018) ("Plaintiffs' conclusory allegation that [the defendants] engaged in a conspiracy with the employees of the drug testing facilities to falsify evidence, without a single supporting fact, is not enough to state a claim").

Consequently, Dekattu's claims based on the Fourth and Fifth Amendments will be dismissed for failure to state a claim upon which relief can be granted.

### C. Motion to Redact

In initiating this case, though Dekattu was detained at the Mecklenburg County jail, he included his Charlotte home address in

15

the complaint and four summonses.  (Doc. 1 at 1; Doc. 1-1).  When the court ordered the complaint struck on July 5, 2022, it instructed the Clerk of Court to mail a copy of the order to Dekattu at both his home address and the Mecklenburg County jail.  (Doc. 4 at 5).  Dekattu now moves the court to redact his home address from the court's July 5, 2022 order because it is available publicly and "can potentially cause an [sic] safety issue" for Dekattu and his family.  (Doc. 14 at 1).

A court's power over its records is constrained by two separate legal principles: the public's presumptive common-law right of access to judicial records, Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598, (1978), and the First Amendment's grant of access to judicial records, Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (citing Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 607, 1982)).  "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'"  Doe v. Public Citizen, 749 F.2d 249, 265-66 (4th Cir. 2014) (quoting Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)).  Accordingly, the "redaction of a judicial opinion is appropriate only when redactions are necessary and justified to protect a party's legitimate interests."  Lipocine Inc. v. Clarus Therapeutics, Inc., No. CV

16

19-622 (WCB), 2020 WL 4569473, at *1 (D. Del. Aug. 7, 2020); see also Doe v. Exxon Mobile Corp., 570 F. Supp. 2d 49, 52 (D.D.C. 2008) ("[A] district court may deny access to judicial records only if, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, it concludes that justice so requires.") (internal quotation marks and citation omitted).

Here, Dekattu requests the redaction of his home address in the interest of his family's safety. Considering all the facts and circumstances, the court discerns no public interest in Dekattu's personal address, which is immaterial to the merits of this action. Redacting his address from the court's July 5, 2022 order would not affect the public's interest in this matter in any meaningful way, while Dekattu has a legitimate and "strong privacy interest in [his] home address[]." Am. Fed'n of Gov't Emps., AFL-CIO, Loc. 1923 v. U.S., Dep't of Health & Hum. Servs., 712 F.2d 931, 932 (4th Cir. 1983). Accordingly, Dekattu's motion to redact his home address is granted and the Clerk of Court will be instructed to redact Dekattu's home address from the July 5, 2022 order (Doc. 4).

### III. CONCLUSION

For the reasons stated, therefore,

17

IT IS ORDERED that this action be DISMISSED WITH PREJUDICE as to the Bivens claims against all Defendants in their official capacity as well as the claims based on First Amendment retaliation and the Eighth Amendment, and DISMISSED WITHOUT PREJUDICE as to the Bivens claims against all Defendants in their individual capacity pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

IT IS FURTHER ORDERED that Dekattu's "Request Urging the Courts to Remove Personal Address from Order Filed July 5, 2022" (Doc. 14) is construed as a motion to redact and is GRANTED. The Clerk of Court shall redact Dekattu's personal address from the court's July 5, 2022 order (Doc. 4).

/s/   Thomas D. Schroeder
United States District Judge

November 18, 2022